UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSHUA HARDY, individually and on behalf of all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br>NISOURCE INC.,<br>    Defendant. | CAUSE NO.: 2:22-CV-322-PPS-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Transfer [DE 16] filed by Defendant NiSource Inc. on December 23, 2022. NiSource moves to transfer this case to the Northern District of Oklahoma in order to compel arbitration under what it characterizes as Plaintiff Hardy's binding arbitration agreement. On January 27, 2023, Hardy filed a response and NiSource filed a reply on February 10, 2023.

**I.  Analysis**

On October 31, 2022, Hardy filed this putative class action seeking overtime wages and other damages under the Fair Labor Standards Act. Hardy alleges that Defendant NiSource is headquartered in Indiana and Hardy worked for it in Indiana. NiSource explains that it contracted with an affiliate of Cypress Environmental Management-TIR, LLC, and Cypress employed Hardy as a welding inspector assigned to NiSource's worksites. NiSource argues that Hardy's employment agreements with Cyprus provide for arbitration in Tulsa, which is in the Northern District of Oklahoma, and thus that the case must be transferred to the Northern District of

1

Oklahoma. Hardy argues that the agreement containing the arbitration clause was formed with Cyprus, not NiSource, and since NiSource is not a party to it, NiSource cannot move to transfer the case based on the agreement's forum selection clause.

Section 1404(a) of the United States Code governs change of venue and provides that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants . . . and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In general, in order for a district court to transfer a case: (1) venue must be proper in the transferor court; (2) venue must be proper in the transferee court; and (3) the transfer must serve the convenience of the parties and witnesses and must be in the interests of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

However, the existence of a valid, agreed-upon forum selection clause changes the usual analysis. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 51 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). A forum-selection clause may be enforced through a motion to transfer filed under 28 U.S.C. § 1404. *Atl. Marine Const.* 571 U.S. at 59. Since agreeing to a forum selection clause effectively preselects the venue, a court is to give the plaintiff's choice of forum no weight when a forum selection clause applies, and the burden therefore shifts to the plaintiff to show why the transfer to the forum to which it agreed should not be granted. *Id*. at 63-64. When parties agree to a preselected forum, a court is not to consider the

2

private interest factors, leaving only the public-interest factors, which "will rarely defeat a transfer motion." Id. at 64. In other words, while transfer to a venue specified in a forum-selection clause is not automatic, absent "extraordinary circumstances unrelated to the convenience of the parties," the court should transfer the case to the specified forum. Id. at 62.

The parties agree that there was an employment agreement between Hardy and Cyprus that includes a forum selection clause. It provides:

> Arbitrations will be held in Tulsa, Oklahoma, unless the arbitrator exercises discretion under the AAA rules to choose a different location. Likewise, any judicial action (e.g., claims for injunctive relief, to compel arbitration, or to enforce an arbitration award) arising out of Employee's employment, its termination, or this Employment Agreement will be brought and maintained exclusively in federal or state court in Tulsa, Oklahoma. Both Employee and Employer consent to personal jurisdiction there; agree to accept mail service for such actions in those courts; and waive any objection to venue there.

Ex. 1 ¶ 4 [DE 16-1].

Hardy argues that before the case can be transferred on the basis of the agreement's forum selection clause, NiSource first has to show that the agreement between Hardy and Cyprus is enforceable at all, and that NiSource is in a position to enforce the agreement. Hardy asserts that Cyprus went through a bankruptcy reorganization since the issuance of the agreement and the agreement between Hardy and Cypress was not retained and argues that the agreement is therefore unenforceable. NiSource argues that only the Northern District of Oklahoma has the authority to determine questions of the enforceability of the arbitration agreement, since the Federal Arbitration Act ("FAA") requires that the agreement's forum selection clause determines where orders compelling arbitration can be entered.

3

The FAA "both prescribes authority and assigns limitations to federal courts in adjudicating arbitrable disputes." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 326 (7th Cir. 1995). This includes defining the court that may make the determination of whether arbitration can be compelled based on the agreement. "Section 4 of the FAA provides parties with the right to compel arbitration, but if an arbitration clause contains a choice of venue provision, only a court within the same district of that venue can enter an order compelling arbitration." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011) (citing 9 U.S.C. § 4, *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir.2009); *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir.1995)); *see also Lauer*, 49 F.3d at 327 ("In addition to setting forth the circumstances under which parties may seek to compel relief, § 4 also establishes the appropriate venue in which they may do so. . . . [It] clearly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control. . . . [T]he inescapable logical import in the present situation, in which the location of arbitration is preordained, is that the statute limits the fora in which § 4 motions can be brought."). Accordingly, only the Northern District of Oklahoma may make a determination as to whether it is appropriate to compel arbitration in this case. *See, e.g.*, Daniels v. Painter, No. 15-CV-1334, 2016 WL 3034246, at *5 (E.D. Wis. May 27, 2016) ("The court finds that transferring this case . . . will facilitate enforcement of the parties' arbitration clause, consistent with § 4 of the FAA. A transfer to that court serves the interests of judicial economy, and the efficient administration of the court system, because the California court

can determine whether and to what extent the parties' disputes are subject to arbitration, and if appropriate, enter a corresponding order compelling arbitration.").

Hardy argues that if the agreement is not enforceable as to NiSource, this Court cannot transfer the matter to Oklahoma for a determination of whether arbitration must be compelled, and therefore must first determine whether the agreement is enforceable. NiSource argues that the Court lacks the authority to determine whether the agreement including the arbitration provision is enforceable because of the venue provision. Indeed, the Court may not address whether arbitration may be compelled, including the enforceability of the arbitration provisions of an arbitration agreement. The only question, then, is whether there is an agreement.

Hardy argues that Cypress's bankruptcy precludes enforcement of the employment contract between Hardy and Cypress because Hardy can no longer bring claims against Cypress. He argues that all non-assumed contracts were rejected in the bankruptcy, so NiSource cannot enforce the agreement against Hardy. NiSource argues that Hardy's employment agreement ceased being an executory contract after his work with Cypress ended, because Hardy, the employee, could no longer materially beach. *See Dick ex rel. Amended Hilbert Residence Maint. Tr. v. Conseco, Inc.*, 458 F.3d 573, 578 (7th Cir. 2006) ("a contract is executory if each party is burdened with obligations which if not performed would amount to a material breach"). Accordingly, at the time of bankruptcy, the employment contract between Cypress and Hardy was no longer executory and survived bankruptcy, including the arbitration provision. Hardy argues that the arbitration agreement itself is an executory contract since arbitration had not been performed as of the time

5

of the bankruptcy. However, even if this is the case, all of the contractual rights that survived the rejection of the agreement in bankruptcy remain. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 203 L. Ed. 2d 876, 139 S. Ct. 1652, 1659 (2019) ("the breach of an agreement does not eliminate rights the contract had already conferred on the non-breaching party [s]o neither could a rejection of an agreement in bankruptcy have that effect"). It appears, therefore, that even assuming the employment agreement were an executory contract that was rejected in bankruptcy, the arbitration agreement therein still remains in force. *See In re Paragon Offshore PLC*, 588 B.R. 735, 749 (Bankr. D. Del. 2018) ("[T]he rejection of an executory contract is only a breach of a contract, and the terms of the contract still control the relationship of the parties. In other words, the Court cannot now erase the contractual obligations the parties have agreed to under the Agreements, at least as it relates to the Arbitration Provision.").

In short, the determination of whether the arbitration agreement is enforceable and arbitration should be compelled must come from the Northern District of Oklahoma. *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 16-CV-369-WMC, 2017 WL 414491, at *4 (W.D. Wis. Jan. 31, 2017) (transferring case despite "dispute [regarding] the validity of the forum selection clause" because "'§ 4 of the FAA "clearly requires a geographic link between the site of arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control' . . . [and] this court lacks that control.") (citing *Lauer*, 49 F.3d at 327; *Daniels*, 2016 WL 3034246 at *5). To the extent that discovery is needed to determine the extent to which the NiSource can enforce the arbitration agreement at issue, it can occur in Oklahoma. As in *Gundrum*, "Plaintiff[]

do[es] not identify any other public interest factor that even arguably weighs strongly, if at all, in favor of trying plaintiff['s] case in this district. Having failed to establish that the forum selection clauses in their arbitration agreements with defendant are invalid, or to demonstrate that there are any 'exceptional factors' weighing against transfer, defendant's motion to transfer to the Northern District of Oklahoma will be granted." 2017 WL 414491 at *6.

## II. Conclusion

Accordingly, the Court hereby **GRANTS** the Motion to Transfer [DE 16] and **DIRECTS** the Clerk of Court to transfer this case to the United States District Court for the Northern District of Oklahoma.

SO ORDERED this 12th day of May, 2023.

                                                      s/ John E. Martin  
                                                      MAGISTRATE JUDGE JOHN E. MARTIN  
                                                      UNITED STATES DISTRICT COURT

cc:     All counsel of record